# In the District Court of the United States
## For the District of South Carolina
### BEAUFORT DIVISION

| | | |
|---|---|---|
| Oleg Kirillov, #57990-004, | ) | |
| | ) | Civil Action No. 9:05-3251-HFF-GCK |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Ruth Yancey, Warden, | ) | **OF THE MAGISTRATE JUDGE** |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

## I.   INTRODUCTION

The Petitioner, Oleg Kirillov ("Petitioner" or "Kirillov"), a federal prisoner proceeding *pro se*, seeks *habeas corpus* relief under Title 28, United States Code, Section 2241. By definition, the relief which he seeks must be based upon a finding that he is being illegally detained in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3). Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post trial petitions for relief and submit findings and recommendations to the District Court.

The Petitioner is challenging the manner in which the BOP is implementing his sentence and thus he correctly filed his Petition pursuant to Section 2241. *See* 28 U.S.C. § 2241. This matter is properly before the Court because this Section 2241 Petition has been filed in the District in which the inmate is incarcerated. *In re Jones*, 226 F.3d 328, 332 (4th Cir. 2000).

## II.   *PRO SE* PETITION

Kirillov presently is incarcerated in the Williamsburg Federal Correctional Institution ("FCI Williamsburg"). Kirillov filed this Petition for a writ of habeas corpus (the "Petition") on October 10, 2005 against Ruth Yancey, Warden of FCI Williamsburg. [1-1]. Kirillov is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. 5 (1980). Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).

### III.    BACKGROUND TO THE CASE

Kirillov was sentenced on June 8, 1999, to a total term of 192 months incarceration in the United States District Court for the Southern District of Florida for conspiracy to engage in racketeering, conspiracy to import cocaine, conspiracy to export cocaine, possession with intent to distribute cocaine, conspiracy to possess with intent to distribute cocaine, and conspiracy. His expected release date from this sentence is December 23, 2011, via Good Conduct Time release.[1]

Kirillov's Section 2241 Petition challenges a disciplinary action which was taken against him by staff at FCI Williamsburg, for which he lost twenty-seven (27) days of good conduct time. Subject matter jurisdiction is appropriate under 28 U.S.C. § 2241, because an inmate's challenge to a disciplinary action wherein good conduct time was taken as a sanction affects the duration of his sentence.

Kirillov alleges that an inexperienced new guard at FCI Williamsburg misunderstood a "joke" Kirillov made to him as an offering of a bribe. Kirillov blames the miscommunication on his "language barrier," as English is not Kirillov's native language, and the guard's inexperience.

Through the prison disciplinary system, Kirillov ultimately was found to have attempted

---

[1]    *See* Exhibit 1 to Respondent's Memorandum. [13-1]

to bribe the guard.  He seeks to have the disciplinary action expunged and the loss twenty-seven (27) days of good conduct time restored.

## IV.  PROCEDURAL HISTORY

On October 10, 2005, Petitioner filed his Petition pursuant to 28 U.S.C. § 2241[2] against FCI Williamsburg's Warden Ruth Yancey, (the "Respondent"), seeking the return of twenty seven (27) days of good time and an expungement of his record in connection with having been found guilty of attempting to bribe a guard.  [1-1]  On November 30, 2005, an Order was filed authorizing service of process and apprising the Respondent that any dispositive motion must be filed no later than forty-five (45) days after an answer or other responsive pleading was filed.  [3-1]

The Respondent filed an Answer and Return on January 23, 2006 [5-1], which meant, pursuant to the Court's November 30, 2005 Order, that any dispositive motions were due on or before March 9, 2006.  However, the Respondent did not file a dispositive motion by that date, leading the court to issue an Order on April 6, 2006 directing the Clerk of Court to place the case on the trial calendar.  [7-1]  The Respondent then filed a motion for leave to file a dispositive motion out of time [8-1], which was granted by an Order signed by the Honorable Henry F. Floyd on May 10, 2006 and which provided that any dispositive motion must be filed within five (5) days of the date of entry of that Order.  [11-1]  The case was again referred to the undersigned United States Magistrate Judge.  [12-1]

On May 11, 2006, the Respondent filed a "Motion to Dismiss, or in the Alternative, for Summary Judgment" with a supporting memorandum and exhibits attached thereto.  [13-1--13-5]  On June 6, 2006, the undersigned issued an Order directing the Respondent to clarify, for the benefit of the Petitioner, whether the Respondent was proceeding under Rule 12(b)(6) or Rule 56.  [14-1]  The Respondent filed a Response, informing the Court, and Petitioner, that it was proceeding under Rule 56.  Accordingly, on June 8, 2006, the undersigned filed an Order

---

[2]     Petitioner has the benefit of the holding in *Houston v. Lack,* 487 U.S. 266 (1988) with respect to the "delivery date" of his Petition.  In the present case, the envelope containing the Petition does not bear a postmark; accordingly, the court will use the date of the Petition (October 10, 2005) as the *Houston v. Lack* "delivery" date.  *See* Order [3-1] filed November 7, 2005.

pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying Petitioner of the summary dismissal procedure and the possible consequences if he failed to adequately respond to Respondent's Motion within thirty-four (34) days.[3]  [16-1]  Petitioner responded by timely filing a series of responsive documents on June 19, 2006, which included Petitioner's request for summary judgment, and what appears to be a pleading agreeing to settle the case for $1,000.00. [17-1; 18-1; 19-1; 20-1]  The Respondent filed a Response on July 7, 2006, contending that it appeared that Petitioner had construed Respondent's Motion for Summary Judgment as an offer of settlement, which the Respondent specifically denied having made.  [21-1]

## V.  THE STANDARD FOR DECIDING A MOTION FOR SUMMARY JUDGMENT

The standard of review for determining a motion for summary judgment was articulated in the recent case of *Al-Marri v. Hanft*, 378 F.Supp. 2d 673, 675-76 (D.S.C. 2005).  Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forth with if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The moving party bears this initial burden of informing the Court of the basis for its motions, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  The Court reviews the record by drawing all inferences most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *citing United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

"Once the moving party carries its burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response . . . must

---

[3]     The explanation to the *pro se* litigant is required by *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), which was a civil rights case.  The same procedure has been held to apply in federal habeas corpus cases under *Webb v. Garrison*, No. 77-1855 (4th Cir., decided July 6, 1977).

set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The adverse party must show more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. If an adverse party completely fails to make an offer of proof concerning an essential element of that party's case on which that party will bear the burden of proof, then all other facts are necessarily rendered immaterial and the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322-23, 106 S.Ct. 2548. Hence, the granting of summary judgment involves a three-tier analysis. First, the Court determines whether a genuine issue actually exists so as to necessitate a trial. Fed. R. Civ. P. 56(e). An issue is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Second, the Court must ascertain whether that genuine issue pertains to material facts. Fed. R. Civ. P. 56(e). The substantial law of the case identifies the material facts, that is, those facts that potentially affect the outcome of the suit. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Third, assuming no genuine issue exists as to the material facts, the Court will decide whether the moving party shall prevail solely as a matter of law. Fed. R. Civ. P. 56(e).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548. The primary issue is whether the material facts present a sufficient disagreement as to require a trial, or whether the facts are sufficiently one-sided that one party should prevail as a matter of law. *Anderson*, 477 U.S. at 251-52, 106 S.Ct. 2505. The substantive law of the case identifies which facts are material. *Id*. at 248, 106 S.Ct. 2505. Only disputed facts potentially affecting the outcome of the suit under the substantive law preclude the entry of summary judgment.

Summary judgment is proper only when, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Blair v. Defender Servs.*, 386 F.3d 623, 625 (4th Cir. 2004). To demonstrate that he is entitled to judgment as a matter of law, a party moving for summary judgment must first present evidence

demonstrating the absence of a genuine issue of material fact.  *Temkin v. Frederick County Comm'rs.*, 945 F.2d 716, 718 (4th Cir. 1991).  Once this requirement is satisfied, the burden shifts to the opposing party, who must "come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Blair*, 386 F.3d at 625, *quoting White v. Rockingham Radiologists Ltd.*, 820 F.2d 98, 101 (4th Cir. 1987).  In meeting this burden, the party may not rest on allegations made in the pleadings.  *Nguyen v. CNA Corp.*, 44 F.3d 234, 237 (4th Cir. 1995).  Finally, if the evidence is such that a reasonable jury could return a verdict for the non-moving party, summary judgment is inappropriate.  *Blair*, 386 F.3d at 625.

## VI.  ANALYSIS

### A.  Exhaustion of Administrative Remedies

As a threshold matter, the Court must address whether Petitioner has exhausted the administrative remedies afforded by the BOP prior to filing suit under Section 2241.  A review of Petitioner's Petition and the attachments thereto demonstrate that he properly exhausted his administrative remedies with respect to the challenge to the disciplinary action.  Petition appealed to the Regional Director, received a response, and then appealed to the General Counsel.  Accordingly, Petitioner has exhausted the administrative remedies available to him.

### B.  Discussion of the Case Against Petitioner

Kirillov asserts that he was falsely accused of bribery, and contends the alleged incident occurred as a result of a conversation he had with a new hiree of the BOP who had not yet been properly trained, and thus could not distinguish between a genuine proposition for bribery and a mere joke.  (Petition, pg. 8).

On April 17, 2005, Kirillov received an incident report charging him with violation of Disciplinary Code 216, "Giving or Offering an Official or Staff Member a Bribe, or Anything of Value."  (*See Exhibit 2*, Incident Report No. 1332562, blocks 9-10, and 28 C.F.R. 541.13, Table 3, Code 216).  The description of the incident stated:

> On April 17, 2005, at approximately 7:45 am, Inmate Kirillov, Oleg #57990-004
> approached me in conversation inside the recreation building.  During the conversation he
> asked me in the future if I wanted to make some money "for example 2 cartons of
> cigarettes for $1,000" that he was the man to see.  I told him that he would not have to

> worry about me doing that and not to talk to me about that again.  I notified my supervisor
> and the Operations Lieutenant.

(*Id*., Block 11).

On April 17, 2005, Kirillov received the incident report.  Kirillov was advised of his

rights in connection with the disciplinary process.  An investigation was conducted and Kirillov

was provided the opportunity to make a statement and offer any evidence in support of his

claims.  Kirillov denied offering the staff member any money and did not ask that any witnesses

be present.  The investigator determined the report was appropriate and forwarded it to the Unit

Discipline Committee ("UDC") for further proceedings.  The investigator also directed that

Kirillov remain in Administrative Detention pending the outcome of the disciplinary process.

On April 19, 2005, the UDC conducted an initial hearing into the charge.  Kirillov was

afforded the opportunity to make a statement and stated that the report was "not true."  He also

stated that he thought the staff member was new and the conversation he had with the staff

member was general in nature.  Kirillov did not offer any additional evidence in support of his

defense.

Based on the evidence before it, the UDC determined that the charge should be referred

to the Discipline Hearing Officer ("DHO") for disposition.  Kirillov was advised of his rights

before the DHO, including, *inter alia*, the right to be present, make a statement, provide

documentary evidence and to have the assistance of a staff representative.  Kirillov

acknowledged those rights and he was provided the opportunity to request a staff representative

and witnesses.  He requested a staff representative but did not request any witnesses.

On May 26, 2005, Kirillov appeared before the DHO, and was advised that his staff

representative either declined or could not appear at that time.  Kirillov was informed that the

hearing could be postponed until another staff representative was appointed.  However, Kirillov

elected to proceed without staff representation.  At the hearing he stated:

> I worked in recreation and this is a new guy.  I teach aerobics in the a.m.  I talk with him.  I
> was wrong.  I told him, if you are going to do business with someone, I am the right
> person.  I don't smoke.  That is too much for cigarettes.

Kirillov did not call any witnesses to corroborate his claims, nor did he present any documents to support his defense.

After deliberation, the DHO determined that Kirillov committed the prohibited act of which he was accused.  In his report, the DHO explained that he considered the written statement of the reporting officer and Kirillov's partial admission during the DHO hearing, to wit:  telling the staff member, "if you are going to do business with someone, I am the man to see[.]" The DHO considered this statement to be a bribe, and the DHO believed the evidence supported a finding that Kirillov committed the prohibited act as charged.

The DHO imposed the following sanctions for the prohibited behavior:  30 days in disciplinary segregation, disallowance of 27 days good conduct time, 90 days loss of commissary privileges and 90 days loss of telephone privileges.  The DHO explained:

> [g]iving or Offering an Official or Staff member a Bribe, or Anything of Value will not be tolerated in the correctional environment. . . . The sanction of 27 days DGCT was imposed as mandated by policy for an inmate sentenced under PLRA guidelines.  The sanction of loss of commissary privileges for 90 days was imposed to impress upon you the seriousness of bribing a staff member, and trying to compromise their position.  The sanctions of 90 days loss of telephone and 30 days disciplinary segregation has been suspended pending 180 days clear conduct in an attempt to deter this type of behavior from recurring and imposed as this is your first infraction.

Kirillov was advised of his right to appeal the proceedings under the Administrative Remedy Procedure.  The DHO completed his written report detailing the charge, the evidence considered, the decision, the evidence relied upon, the sanctions and the reasons for the sanctions imposed on May 5, 2005 and provided a copy of this report to Kirillov on May 12, 2005.

## C.  Due Process in Prison Disciplinary Proceedings

This Court's analysis as to whether Kirillov received due process is guided by *Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974), where the Supreme Court held that when a state creates protected liberty interests in good-time credits, the inmate is entitled "to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to ensure that the state-created right is not arbitrarily abrogated[.]"  *See also Riccio v. County of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) (same).  *Wolff* teaches that before prisoners may be punished for misconduct by being deprived of good-time credits, they

must be given advance written notice of the charges against them, they must be allowed to call witnesses (if prison safety so allows), and the factfinders must issue a written statement as to the evidence relied upon and the reasons for the disciplinary action.  418 U.S. at 563-67, 94 S.Ct. at 2978-80.

The BOP rules regarding disciplinary procedures are codified at 38 C.F.R. § 541.10 *et seq*.  These rules and regulations were written so as to comply with the constitutional requirements of due process in prison disciplinary matters.

The record of the hearing indicates that the due process requirements of *Wolff* were observed.  Kirillov was given advance written notice of the charges more than 24 hours before the DHO hearing.  He was offered the opportunity to present evidence in the form of documents or witnesses, but did not provide either type of evidence.  He was also afforded the opportunity to have the assistance of a staff representative.  As mentioned above, Kirillov initially asked for a staff representative but, at the time of the hearing, the staff representative either declined to appear or could not appear.  Kirillov was given the choice whether to postpone the hearing until another staff representative could be obtained or proceed with the hearing without staff representation.  Kirillov elected to proceed without staff representation.  The record of the hearing reflects that Kirillov appeared and made a statement to the decision maker and reflects the evidence relied upon and the reasons for the decision and sanctions imposed.  Thus, the *Wolff* mandates were complied with in the instant case.

### D.  Sufficiency of the Evidence in Prison Disciplinary proceedings

In *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 105 S.Ct. 2768 (1985), the Supreme Court set out the constitutional evidentiary standard to be used when courts review prison discipline decisions.  The Supreme Court held that due process is satisfied if there is "some" evidence to show that the inmate committed the offense.  472 U.S. at 455.  The Court declined to adopt a more stringent evidentiary standard as a constitutional requirement, stating:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances.  The fundamental fairness guaranteed by the Due Process

> Clause does not require courts to set aside decisions of prison administrators that have
> some basis in fact.

472 U.S. at 456.

The "some evidence" standard is a lenient one, requiring no more than "a modicum of evidence," and is met if there is any evidence in the record that could support the disciplinary board's decision. 472 U.S. at 455-56. This standard requires "only that the decision not be arbitrary or without support in the record." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). As the Supreme Court noted in *Hill*:

> Ascertaining whether this standard is satisfied does not require examination of the entire
> record, independent assessment of the credibility of witnesses or weighing of the
> evidence. Instead, the relevant question is whether there is any evidence in the record
> that could support the conclusion reached by the disciplinary board.

472 U.S. at 455-56, *see also Baker v. Lyles*, 904 F.2d 925, 932 (4th Cir. 1990).

When reviewing a prison disciplinary proceeding, the court should determine only whether the DHO's decision to revoke good-time credits has some factual basis. *Hill*, 472 U.S. at 456; *McPherson*, 188 F.3d at 786. Judicial review of prison disciplinary actions is, therefore, limited solely to a determination to whether there is evidence in the record to support the DHO's decision. As noted by the Seventh Circuit:

> Under *Hill*, the courts are barred from assessing the relative weight of the evidence. It is
> therefore in general immaterial that an accused prisoner presents exculpatory evidence
> unless that evidence directly undercuts the reliability of the evidence on which the
> disciplinary authority relied or there are other extra-ordinary circumstances.
>
> Courts have followed this approach in decisions after *Hill*. While the evidence relied upon
> by the disciplinary board must bear sufficient indicia of reliability, . . . once the court has
> found the evidence reliable, its inquiry ends--it should not look further to see whether
> other evidence in the record may have suggested an opposite conclusion.

*Viens v. Daniels*, 871 F.2d 1328, 1335 (7th Cir. 1989), *citing Brown v. Frey*, 807 F.2d 1407, 1414 (8th Cir. 1986). Put another way, the due process requirement that there be a written record does not "imply that a disciplinary board's factual findings or decisions with respect to appropriate punishment are subject to second-guessing upon review." *Hill*, 472 U.S. at 455.

Applying this deferential standard to the case at bar, this Court's review of the record in this case shows that there was some evidence to support the DHO's decision that Kirillov committed the code violation of "Giving or Offering an Official Staff Member a Bribe, or

Anything of Value."  Although Kirillov claims the accusation is false, he nonetheless admitted at the DHO hearing that he told the staff member, "[i]f you are going to do business with someone, I am the man to see." (Exhibit 5, block V).  According to the incident report, the officer to whom this statement was made understood the statement to be a bribe.  (Exhibit 2).  The DHO relied upon the written report of the investigating officer, as well as Kirillov's own admission that he made the statement, to find Kirillov committed the prohibited act.  As there is clearly some evidence to support the DHO's decision, it is recommended that it be upheld.

**RECOMMENDATION**

Based upon the reasons set forth above, it is recommended that Petitioner's Petition for Habeas Corpus relief **[1-1] should be denied and dismissed**; Respondent's Motion for Summary Judgment **[13-1] should be granted,** and Petitioner's Motion for Summary Judgment **[18-1] should be denied.**


S/George C. Kosko
United States Magistrate Judge

August 28, 2006

Charleston, South Carolina

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation" & The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3, 1992 U.S.Dist. LEXIS® 6243 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the period for filing objections, **but not thereafter**, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to**

**the [magistrate judge] useless.  * * *  This duplication of time and effort wastes
judicial resources rather than saving them, and runs contrary to the purposes of
the Magistrates Act.  * * *   We would hardly countenance an appellant's brief
simply objecting to the district court's determination without explaining the
source of the error.**

*Accord* <u>Lockert v. Faulkner</u>, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the
appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he
did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating**
>
> **only 'I object' preserves no issue for review.  * * *  A district judge should not**
>
> **have to guess what arguments an objecting party depends on when reviewing a**
>
> **[magistrate judge's] report.**

*See also* <u>Branch v. Martin</u>, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no
de novo review if objections are untimely or general"), which involved a *pro se* litigant; and <u>Goney v.
Clark</u>, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo*
review").

**This notice, hereby, apprises the parties of the consequences of a failure to file
specific, written objections.**  *See* <u>Wright v. Collins</u>, *supra*; and <u>Small v. Secretary of HHS</u>, 892
F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989).  Filing by mail pursuant to Fed. R. Civ. P.
5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**
